# GABRIELLE F. BARTLETT *v.* E. LEWIS BARTLETT IV
## (14275)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued September 24—decision released November 12, 1991

*Richard F. Paladino,* for the appellant (plaintiff).

*James D. Reardon,* for the appellee (defendant).

SHEA, J. This is an appeal from the denial by the trial court of the plaintiff's motion to open a judgment of dissolution for the purpose of modifying the award of periodic alimony. We are asked to decide whether the court was bound to consider an inheritance received by the defendant several years after the original alimony award, the assets of which had vested in him but had not yet been distributed to him. We answer this question in the affirmative and, therefore, reverse the judgment and remand the case for further proceedings.

The relevant facts are undisputed. On June 26, 1985, the trial court, *D. Dorsey, J.,* rendered a judgment dissolving the twenty-one year marriage between Gabrielle F. Bartlett, the plaintiff, and E. Lewis Bartlett IV, the defendant. The court found that the marriage had broken down irretrievably and ordered the defendant to pay the plaintiff $7500 in attorney's fees, $194,000 in lump sum alimony, and $1900 in monthly periodic alimony and also to maintain health insurance for her benefit until March 26, 1986. The court awarded the defendant sole ownership of the house where the two had spent their married life.

During the trial of the marital dissolution action, the plaintiff had attempted to introduce evidence of a revocable trust created by the defendant's mother, from which she claimed the defendant would benefit upon his mother's death. She argued that evidence of the defendant's contingent interest in the trust was relevant to his financial circumstances, a significant factor for the court to consider when dividing the marital

property and fashioning an award of alimony. The court rejected this argument, stating that, because the defendant's mother retained the power to revoke the trust at any time, the potential inheritance was a mere expectancy, not a vested property interest, and was thus properly excluded according to the rule announced in *Krause* v. *Krause,* 174 Conn. 361, 387 A.2d 548 (1978). No appeal was taken from the original judgment of dissolution.

On September 13, 1990, the plaintiff filed a "Motion to Reopen and Modify Dissolution Judgment," pursuant to General Statutes § 46b-86,[1] seeking an increase in the amount of periodic alimony originally awarded to her. She claimed that there had been a substantial change in circumstances since the dissolution in that (1) the defendant had finally acquired a sizable inheritance from his mother's estate, and (2) her health had deteriorated since the original judgment, causing her to incur greater health care expenses. She sought an additional $1100 per month in alimony and also requested that the defendant be ordered to pay for her health insurance coverage once again.[2]

[1] General Statutes § 46b-86 provides in pertinent part: "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of *a substantial change in the circumstances of either party* . . . . This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other under prior law. No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of such pending motion upon the opposing party pursuant to section 52-50." (Emphasis added.)

[2] In the alternative the plaintiff requested an increase of $1600 per month in alimony if she were required to purchase the health insurance coverage herself.

Evidence presented at the hearing on the motion revealed that the defendant's mother had died on July 28, 1990, leaving a last will and testament and a trust agreement executed in conjunction with the will. The will named the defendant as the legatee of certain items of personal property of no great monetary value and also provided that the residuary estate be transferred to the trust created at the time the will was executed. The trust agreement directed the trustee to "set out two-thirds (2/3) of the Trust Estate" for the defendant upon his mother's death. The estimated value of the whole trust estate, including the distribution to be received upon settlement of the probate estate, was between $2,000,000 and $3,000,000. A bank official testified, however, that it was likely to take approximately two years for the defendant to obtain actual possession of his inheritance because administrative matters, such as the payment of taxes, would delay the distribution. In addition, the marital home now owned solely by the defendant had appreciated in value from $300,000 at the time of the original judgment to $743,000 at the time the motion was being considered.

The trial court, *Hon. Harry W. Edelberg,* state trial referee, denied the motion for essentially two reasons. First, the court concluded that Judge Dorsey had already considered the possibility of the inheritance during the original dissolution proceeding when fashioning the award of alimony and the assignment of property. Second, the court interpreted our decision in *Rubin* v. *Rubin,* 204 Conn. 224, 527 A.2d 1184 (1987), to require exclusion of the evidence of the defendant's inheritance because he had not yet received any assets from the estate or from the trust. The plaintiff argues that the court was mistaken with respect to both issues[3]

---

[3] The plaintiff has advanced no specific claim of error with respect to the court's failure to consider the appreciation in the value of the marital home in ruling on the motion. Consequently, we do not address that aspect of the court's ruling.

and seeks a reversal of the decision and a new hearing on the motion. We agree with this claim and grant the requested relief.

I

The first claim, that the trial court, *Hon. Harry W. Edelberg,* state trial referee, improperly concluded that Judge Dorsey had considered the possibility of the inheritance[4] for purposes of the original property division and alimony award, is easily resolved. In rendering the dissolution judgment, Judge Dorsey stated, with respect to the property division and alimony award, that he had considered "the health, the station, the occupation of both parties, the sources of income, the vocational skills, and the employability, the estate, and the liabilities and the needs of each party—and the opportunity for—of each for the future acquisition of capital assets and income."[5] While this language itself is ambiguous in that the defendant's then contingent interest in his mother's estate could conceivably have been classified as an "opportunity for . . . the future acquisition of capital assets and income," any doubt is dispelled by the court's earlier exclusion of the evidence of the revocable trust. The record indicates that Judge Dorsey had an extended colloquy with counsel for both parties, consulted case law on the subject and ultimately excluded evidence of the potential inheritance because it was a mere expectancy that had not yet vested.[6]

---

[4] For the sake of convenience we use the term "inheritance" to refer to the defendant's interest as beneficiary of both his mother's will and the trust created by her.

[5] This was essentially a recitation of the factors set forth in General Statutes §§ 46b-81 and 46b-82. See footnote 8, infra.

[6] After counsel for the defendant stated his first objection to admission of evidence of the potential inheritance, Judge Dorsey consulted case law during a recess. Upon returning, he gave a lengthy synopsis of the facts of *Krause* v. *Krause,* 174 Conn. 361, 387 A.2d 548 (1978), and then noted that "the court [in *Krause*] went on to say the expectancy, that is, the inheritance, is speculative. . . . Expectancy is the bare hope of succession.

The defendant argues that although the court purported to exclude that evidence, the fact that the plaintiff was awarded $194,000 in lump sum alimony and $1900 per month in periodic alimony, amounts he considers disproportionately large, indicates that the court must have considered the potential inheritance in arriving at its decision. In support of his argument, he notes that the lump sum alimony payment represented more than one half the value of the equity in the marital home at the time of the dissolution,[7] and that at the time the $1900 monthly alimony award was made, his income was shown to be only $1070 per week with expenses of $1448 per week. We are not persuaded by this argument.

No inference can be drawn from the terms of the marital dissolution judgment, which has become final and

It is an inchoate hope. It has no attribute of property, and the interest to which it relates is at the time nonexistent, and may never exist. Meaning that, of course, a testator has the absolute right to cut anybody off up to the very last moment he breathes. And then it went on to say the moment of the decedent's death determines the right of inheritance. . . ." Thereafter, the following colloquy took place between Judge Dorsey and counsel for the plaintiff about admission of the potential inheritance:

"Mr. Mikolitch: The primary beneficiary is—It's a revocable trust. The primary beneficiary is the donor, and at her death there would be certain— the defendant would be the primary beneficiary.

"The Court: It isn't any different than a will, except she can revoke it at any time.

"Mr. Mikolitch: Well, she can, but the point is that it's been in effect all these years.

"The Court: But she still has that power.

"Mr. Mikolitch: She still has that power, but—

"The Court: She could revoke it tomorrow.

"Mr. Mikolitch: That's true.

"The Court: I could enter an order against it, and she still would have the power to revoke it.

"Mr. Mikolitch: Well, she could. That's true.

"The Court: *But I'm not going to let it in, based upon the Krause case.*" (Emphasis added.)

[7] Undisputed evidence indicated that the house had an appraised value of $300,000 with an outstanding mortgage of $60,000 resulting in a value for the equity of $240,000 or $120,000 for each party.

was never appealed, that its terms were influenced by improper consideration of a potential inheritance, especially when the court expressly excluded such evidence as irrelevant. A judgment that has become final must be presumed to have been based on the evidence adduced at trial and rendered in accordance with the law. *Kelly* v. *New Haven Steamboat Co.,* 75 Conn. 42, 46–47, 52 A. 261 (1902). In arriving at an equitable division of property and award of alimony, the court was not limited to a mechanical halving of the equity in the marital home or a simple subtraction of the defendant's expenses from his income. General Statutes §§ 46b-81 and 46b-82 set forth a host of factors to be considered,[8] and the court was entitled to exercise wide latitude in varying the weight placed upon each factor in light of the particular circumstances of the case. *Carpenter* v. *Carpenter,* 188 Conn. 736, 741, 453 A.2d 1151 (1982); *Valante* v. *Valante,* 180 Conn. 528, 531, 429 A.2d 964 (1980). The claim that the award of alimony and the division of property in the original judgment were unduly favorable to the plaintiff unless the court considered the defendant's potential inheritance is refuted by the many factors actually relied upon by Judge Dorsey in rendering his decision.[9] Thus the inference the defendant seeks to draw from the terms of the judgment is unfounded.

[8] Under the provisions of both statutes, the trial court "shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . ." General Statutes § 46b-82. General Statutes § 46b-81 (c) also provides for consideration of the "liabilities" of each of the parties. In assigning marital property, the trial court must also consider the opportunity for each party to acquire future capital assets and income, as well as the contribution of each of the parties toward the value of their respective estates. General Statutes § 46b-81 (c).

[9] Rendering his decision orally, Judge Dorsey expressly found that the plaintiff was fifty-six years old at the time of dissolution, that she had high blood pressure and a residual nervous condition, that she had made substantial financial contributions to the marriage and the marital home, that

## II

The second claim advanced by the plaintiff is that the trial court, in entertaining her motion to modify the periodic alimony award, improperly excluded the evidence of the defendant's inheritance. She argues that the inheritance vested in the defendant upon his mother's death and that it therefore should have been considered by the court because it was no longer a mere expectancy, as it had been at the time of the original dissolution proceedings in 1985.

The defendant disagrees not only with the plaintiff's view of which assets are properly considered on a motion to modify alimony but also with her assertion that the inheritance had "vested" in him at all. He claims that, when his mother died, the inheritance vested not in him but in the trust created by his mother. He argues that the inheritance will not vest in him until the trustee distributes the proceeds to him, and that only then may the assets be considered for purposes of modifying the award of periodic alimony. This argument reveals a misunderstanding of the difference between the vesting of a property right and the possession of property.

It is well settled that a person's right of inheritance vests at the moment of the decedent's death; *Emanuelson* v. *Sullivan*, 147 Conn. 406, 409, 161 A.2d 788 (1960); and that "although distribution occurs a considerable time thereafter, it relates back to the date of the death as the time when the right of the beneficiary became fixed." *Blodgett* v. *Bridgeport City Trust Co.*, 115 Conn. 127, 144, 161 A. 83 (1932). In this case, it was not necessary for the plaintiff to prove that the

the couple had been married for twenty-one years, and that there was greater fault on the part of the defendant with respect to the cause of the breakdown of the marriage.

defendant had acquired actual possession of the assets of his mother's estate in órder to make the necessary showing of a substantial change in circumstances not contemplated at the time of dissolution. Proof of the vesting of the defendant's right to his inheritance was sufficient to support the motion to modify the award of periodic alimony. It is of no moment that the assets to which the defendant was entitled were temporarily held in a trust, pending settlement of his mother's estate. The trust was merely an administrative vehicle that could not alter in any way the defendant's right to his inheritance, which vested in him at the moment of his mother's death. *Krause* v. *Krause,* supra; *Kingsbury* v. *Scovill,* 26 Conn. 349, 352 (1857).

Having determined that the defendant's inheritance did vest in him upon the death of his mother, we hold that the trial court was bound to consider that inheritance in ruling on the motion for an increase in alimony, despite the fact that the assets of the inheritance had not yet been distributed to him. The trial court, in ruling on the motion, misconstrued our decision in *Rubin* v. *Rubin,* supra, when it limited its inquiry to the defendant's earnings. In *Rubin,* the trial court, after hearing evidence that the husband was a residuary beneficiary of a revocable inter vivos trust created by his mother and was one of two equal residuary legatees under his mother's will, ordered the husband to pay to his wife "one third of the net estate that he may receive 'from either the trust created by his mother and from her by way of a testamentary gift or other form of inheritance.' " Id., 227. The Appellate Court affirmed the trial court's ruling, but we reversed, holding that such a contingent order could not be upheld as a valid assignment of property under § 46b-81 or as a valid award of alimony under § 46b-82, because it was based upon a mere expectancy on the part of the plaintiff husband, rather than on a vested property right.

We determined that such an order was illusory because "[t]he expectancy may never be realized because of diminution of the donor's wealth or a change in the planned disposition of his property." Id., 235. We also pointed out that "[b]ecause periodic alimony orders are modifiable when changes in circumstances occur, the increase in the plaintiff's financial ability that may occur upon his mother's death would constitute a change of circumstances ordinarily warranting an increase in the weekly alimony payment . . . ." Id., 235–36.

In this case, the trial court in the dissolution action in 1985 properly excluded evidence of the defendant's potential inheritance of his mother's estate, because at that time, as was the case in *Rubin,* it was a mere expectancy, in that his mother retained the power to diminish the value of the estate or to revoke or reduce her son's contingent interest in it at any time. See also *Fattibene* v. *Fattibene,* 183 Conn. 433, 443, 441 A.2d 3 (1981); *Thompson* v. *Thompson,* 183 Conn. 96, 98–99, 438 A.2d 839 (1981); *Krause* v. *Krause,* supra. Once the defendant's mother died, however, precisely the situation contemplated in *Rubin* occurred: the defendant's financial circumstances changed substantially upon the vesting of his inheritance, warranting the plaintiff's motion to open the judgment to increase the award of periodic alimony. Accordingly, it was improper for the court not to consider the evidence of that vested interest.

The defendant further argues that, even if his inheritance vested upon his mother's death, the trial court was limited to evidence of liquid assets and income-producing real property for the purpose of modifying the alimony award. He admits, however, that a court may properly consider all assets, liquid and non-liquid alike, for the purpose of fashioning the original alimony award at the time of dissolution. We have stated in the past that "[t]he same criteria that deter-

mine an initial award of alimony are relevant to the question of modification, and these require the court to consider, without limitation, the needs and financial resources of each of the parties, as well as such factors as health, age and station in life. General Statutes § 46b-82." *Cummock* v. *Cummock,* 180 Conn. 218, 221–22, 429 A.2d 474 (1980). The defendant proffers, and we perceive, no logical reason to justify a departure from our decision in *Cummock* to draw the distinction he urges. On the contrary, logic and sound public policy dictate a rule that requires the consideration of all assets, because a contrary rule would encourage parties who acquire substantial amounts of nonliquid assets after the original judgment to insulate themselves from paying more alimony, despite their increased wealth, by simply delaying the liquidation of those assets. We therefore reject the argument that only liquid assets are relevant to alimony modification.

The final claim advanced by the defendant is that the trial court correctly excluded evidence of the inheritance because it was comprised of "property," and although the court had authority to modify the alimony award, it had no such authority to modify the original assignment of "property." See General Statutes § 46b-86, footnote 1, supra. In other words, he claims that the motion to modify alimony was nothing more than an artifice designed to effectuate a new distribution of the property inherited rather than to increase the alimony award. This argument is without merit. Although we agree that the court had no statutory authority to modify the original property assignment, that argument is irrelevant because the plaintiff did not seek to have a portion of the property inherited by the defendant assigned to her. She sought to increase the periodic alimony award because the defendant's financial circumstances had changed substantially due to his inheritance of certain property.

Whether the defendant inherited "property" or cash is of no consequence; a substantial increase in wealth of any sort may form an appropriate ground for a motion to modify alimony.

Our conclusion that the trial court should have considered the defendant's vested inheritance for purposes of alimony modification comports with our recent decision in *Eslami* v. *Eslami*, 218 Conn. 801, 591 A.2d 411 (1991). In *Eslami,* the trial court failed to consider the plaintiff wife's vested interest in her father's estate, the assets of which she had not yet received, because the value of her interest could not be determined. Evidence at the trial showed that her brother had initiated a will contest which was still pending and that the value of her interest depended upon the resolution of that litigation.[10] We affirmed the judgment of the trial court, noting that "[a]lthough the interest involved here had vested in the wife at the time of trial, the court could reasonably have concluded that uncertainty as to the amount she would eventually receive from her father's estate militated against consideration of that interest for the purpose of financial awards." Id., 807. We also indicated that modification of the alimony award would be appropriate when the value of her interest became ascertainable. Id., 808.

In the case now before us, the trial court never reached the issue of valuation of the inheritance, as the trial court in *Eslami* did, because it declined to consider the defendant's inheritance at all in ruling on the motion to modify alimony. The court's mistaken belief that the inheritance had not yet vested because the defendant had not yet received the proceeds prompted the court to deny the motion without attempting to ascertain the value of the inheritance. Had the court

---

[10] The wife expected to receive about $180,000 from the estate if the will were upheld as opposed to $80,000 if it were not upheld. *Eslami* v. *Eslami*, 218 Conn. 801, 806, 591 A.2d 411 (1991).

made the appropriate inquiry, it would have had discretion to resolve the question in any number of ways. For example, if the court had been able to ascertain the value of the defendant's interest with reasonable certainty, it could have entered an order in which the increase in the award of periodic alimony would accrue until such time as he actually received the inheritance or was otherwise able to pay his obligation. Such an order would have extended the benefit of the modification to the plaintiff and would have simultaneously protected the defendant from the threat of being held in contempt for disobeying a modified alimony order that might have exceeded his current financial ability to meet it. See *Rubin* v. *Rubin,* supra, 237. If, on the other hand, the court had not been able to make a proper valuation of the inheritance, it could have done what the trial court in *Eslami* effectively did: postpone consideration of the inheritance until such time as its value could be ascertained with reasonable certainty. Because the court never reached the issue of valuation, however, we cannot uphold its decision to deny the motion.

We note finally that the plaintiff should not be penalized by the passage of time from the date she filed the motion to modify alimony to the date on which the new hearing will be held. If, on rehearing, the trial court should decide that she is entitled to an increase in her award of periodic alimony, the court's order should be effective as of the date of service of notice of the motion upon the defendant so as to afford the plaintiff the benefit of the modification from the time when it was originally sought. General Statutes § 46b-86 (a).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.