PAUL A. GAYNOR, ADMINISTRATOR (ESTATE OF MARY CATHERINE IX GAYNOR) *v.* S. GILES PAYNE ET AL.
(SC 16648)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

Argued February 14—officially released September 3, 2002

*Richard J. Buturla*, for the appellant (plaintiff).

*Joseph T. Sweeney*, for the appellees (named defendant et al.).

*Opinion*

VERTEFEUILLE, J. The plaintiff, Paul A. Gaynor, in his capacity as administrator of the estate of his mother,

Mary Catherine Ix Gaynor (decedent), appeals[1] from the summary judgment rendered against him by the trial court. The plaintiff claims that: (1) despite having personally released the named defendant, S. Giles Payne (defendant), the former executor of the decedent's estate, of all liability relating to the administration of the estate, he may bring an action against the defendant for mismanagement of the estate; and (2) his claims are not barred by the doctrine of res judicata as a result of the Probate Court approval of the defendant's final accounting. We conclude, first, that the plaintiff is not barred by the release from bringing such an action. We further conclude that, although some of the plaintiff's claims are barred by the doctrine of res judicata, there is no count of the plaintiff's complaint in which all the claims are barred. Accordingly, we reverse the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. The defendant is an attorney who represented the decedent and later served as executor of her estate.[2] In June, 1996, the decedent died testate. Her will, drafted by the defendant, named him the executor of her estate. The decedent's three children, one of whom is the plaintiff in the present case, became dissatisfied with the defendant's administration of the estate, and in March, 1997, they filed with the Branford Probate Court an application to remove the defendant as executor. In the application, the decedent's children alleged negligence, breach

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The plaintiff also named as a defendant the law firm of Brody and Ober, P.C. (law firm), by whom the defendant was employed, and alleged that the law firm was liable on the theory of respondeat superior for the acts of the defendant. The plaintiff previously had withdrawn the action against a third defendant, Thomas Errichetti. For convenience, we refer hereinafter to Payne as the defendant.

of fiduciary duty and conflict of interest in the defendant's drafting and execution of the decedent's will, the administration of the decedent's estate and his exercise of authority under a power of attorney prior to the decedent's death.

Subsequently, the defendant and the decedent's children agreed to resolve their differences. The defendant agreed to resign as executor and the decedent's children agreed to pay the defendant certain fees and to provide him with a general release. On March 21, 1997, the plaintiff, along with the decedent's two other children, executed a "Release and Waiver of Claims Agreement" (release) with the defendant. Pursuant to this release, the decedent's three children purported to release the defendant from all liability of any type, including, but not limited to, liability arising out of the defendant's provision of legal services to the decedent and the decedent's estate, and any liability associated with the defendant's serving as executor of the decedent's estate. The defendant filed his final accounting for the estate, and, after the accounting was approved by the Probate Court, resigned as executor of the decedent's estate. The plaintiff then was appointed administrator of the estate.

In 1998, the plaintiff brought this action in his capacity as administrator of his mother's estate, alleging, inter alia, negligence, breach of fiduciary duty and breach of contract in the defendant's administration of the decedent's estate and in his provision of legal services to the decedent and the decedent's estate. The defendant and his law firm; see footnote 2 of this opinion; moved for summary judgment, arguing that the plaintiff's claims were barred by his execution of the release. They further argued that the plaintiff's claims were barred by the doctrine of res judicata because the plaintiff had not objected to the defendant's final accounting, which had been approved by the Probate Court. The

plaintiff, in opposition to the motion for summary judgment, argued that his claims were not barred because the release was not executed on behalf of the decedent's grandchildren, who are remainder beneficiaries of a trust established under the decedent's will.

The trial court agreed with the defendant that the plaintiff's claims were precluded by the release. Specifically, the trial court found that the decedent's children intended to bind all beneficiaries of the decedent's estate when they executed the release. The trial court therefore rendered summary judgment in favor of the defendant and his law firm, and this appeal followed. Further facts will be set forth as necessary.

I

The first issue that we must resolve is whether the plaintiff, having executed a release along with the decedent's other two children absolving the defendant of all liability related to the administration of the decedent's estate, may, nevertheless, in his capacity as administrator of the estate, bring a claim against the defendant. The plaintiff claims that the release did not discharge all claims against the defendant because all beneficiaries of the estate were not parties to the release. Specifically, the plaintiff argues that, because the decedent's grandchildren, who are remainder beneficiaries under a trust that is the principal beneficiary of the decedent's will, were not parties to the release, the plaintiff may make claims against the defendant on their behalf as administrator of the decedent's estate. The defendant counters that because the decedent's grandchildren hold only an expectancy interest, pursuant to the trust, rather than a vested property interest, the plaintiff has no basis upon which to bring a claim against the defendant. The defendant, therefore, argues that the release extinguished any rights the estate may have had against him. We agree with the plaintiff that the grandchildren have

vested property interests in the trust and that the release did not encompass those interests. Accordingly, we conclude that the plaintiff may maintain this action in his capacity as administrator of the decedent's estate on behalf of the decedent's grandchildren.

The following additional facts are necessary to our resolution of this issue. In her will, the decedent bequeathed certain tangible personal property to her children. The remainder of her estate was left to a trust established by the will, over which the defendant also was named trustee. The corpus of the trust was to be divided into three shares, one for each of her children living at the time of the decedent's death. Income from the respective portions of the trust was to be paid to each of the children during their lives. Upon the death of each child, the corpus of his or her trust was to be distributed per stirpes to his or her then living issue. If a child died without living issue, the interest was to be distributed per stirpes to the decedent's living issue. There currently are four living grandchildren of the decedent.

We begin by setting forth the standard of review that governs our examination of this issue. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applica-

ble principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § [17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994). . . . *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 380–81, 374 A.2d 820 (1998)." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 209, 757 A.2d 1059 (2000).

The plaintiff and the defendant and his law firm agree that, under *Woodhouse* v. *Phelps*, 51 Conn. 521, 523 (1884), when all the beneficiaries of an estate release any claims that they might have, any claim that the estate might have is also released. It is undisputed in the present case that the decedent's four living grandchildren did not execute the release. The parties disagree, however, as to whether the grandchildren should be considered beneficiaries of the estate.

The plaintiff is bringing this action in his capacity as the administrator of the decedent's estate. As such, he is the representative of all beneficiaries under the decedent's will. See *Hall* v. *Schoenwetter*, 239 Conn. 553, 559, 686 A.2d 980 (1996). He argues that the grandchildren are beneficiaries of the estate because they hold contingent, remainder interests in the trust that is the principal beneficiary of the estate. Their interests are contingent only on their surviving their parents.

The defendant argues, however, that the grandchildren have no rights against him because their interest in the trust corpus is a mere expectancy. More specifically, the defendant claims that because the interests of the grandchildren are subject to a condition precedent, namely, their surviving the decedent's children, the grandchildren hold only an inchoate property interest

from which no presently existing rights may flow. Accordingly, the defendant claims that the only presently existing property interests in the estate are the life estates held by the decedent's three children, all of whom were parties to the release. We disagree.

"[An] [e]xpectancy is the bare hope of succession to the property of another, such as may be entertained by an heir apparent. Such a hope is inchoate. It has no attribute of property, and the interest to which it relates is at the time nonexistent and may never exist." (Internal quotation marks omitted.) *Krause* v. *Krause*, 174 Conn. 361, 365, 387 A.2d 548 (1978). In *Krause*, this court concluded that certain testimony regarding the possibility that the plaintiff could inherit assets from her mother was inadmissible because the inheritance was only an expectancy and, therefore, too speculative prior to her mother's death. Id. This court concluded that it is "[t]he moment of the decedent's death [that] determines the right of inheritance or testamentary succession." Id.

Our conclusion in *Krause* was consistent with long established principles concerning the vesting of rights of inheritance. "It is well settled that a person's right of inheritance vests at the moment of the decedent's death . . . ." *Bartlett* v. *Bartlett*, 220 Conn. 372, 379, 599 A.2d 14 (1991), citing *Emanuelson* v. *Sullivan*, 147 Conn. 406, 409, 161 A. 788 (1960). Upon the decedent's death in the present case, therefore, the grandchildren's rights of inheritance vested. Furthermore, those vested rights are enforceable.

We have stated previously that "[t]he defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence." (Internal quotation marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158, 166, 708 A.2d 949 (1998). The decedent's grandchildren in the present case hold contingent remainders

pursuant to the trust established by the decedent's will. As contingent remaindermen, they have the right to bring an action against the trustee for breach of trust and for an accounting. See G. Bogert & G. Bogert, Trusts and Trustees (2d Ed. Rev. 1995) §§ 871, 961. Termination of the trust is impossible without the consent of the grandchildren. See 4 A. Scott, Trusts (4th Ed. Fratcher 1989) § 340. Furthermore, the remainder interests of the grandchildren are alienable and may be reached by their creditors. L. Simes & A. Smith, Future Interests (2d Ed. 1956) § 402. All of these factors demonstrate that the decedent's grandchildren have enforceable rights with regard to their contingent remainder interests in the trust.[3] The contingent remainders held by the decedent's grandchildren therefore are not expectancies but, instead, are presently existing property interests. See R. Cunningham, W. Stoebuck & D. Whitman, Property (2d Ed. 1993) § 3.24, p. 151 n.7 (noting that alienability of contingent remainders reflects "the modern tendency to view contingent remainders . . . as presently existing property interests rather than mere possibilities").

We therefore reject the defendant's argument that the interests held by the grandchildren are mere expectancies because they are contingent in nature. Enforceability is the dispositive factor in deciding whether a given interest is an expectancy or, instead, a legally cognizable property interest. That the contingent remainders of the grandchildren in the present case are subject to a condition precedent, namely, that they survive their parents in order to take under the trust, is thus irrelevant; although that condition may never be fulfilled, that possibility does not alter the nature of the contingent remainder as an enforceable, presently

---

[3] We note that the holder of a contingent remainder in real property has a statutorily conferred right to bring an action against a life tenant for waste. See General Statutes § 52-563.

existing property interest. Cf. *Krafick* v. *Krafick*, 234 Conn. 783, 797, 663 A.2d 365 (1995) (holding that contingent nature of contractual right does not thereby render right expectancy).

The decedent's grandchildren hold vested, enforceable contingent remainder interests in their grandmother's estate. We conclude, therefore, that the decedent's grandchildren are beneficiaries under the will, and that their rights against the defendant arising out of their interests were not extinguished by the release, which they did not execute. Accordingly, the release does not bar the plaintiff from bringing this action in his capacity as administrator of the decedent's estate.[4]

## II

We now turn to the alternate ground, suggested by the defendant, for affirming the judgment of the trial court. The defendant claims that the trial court's rendering of summary judgment in favor of the defendant and his law firm can be sustained because the plaintiff is barred by the doctrine of res judicata from asserting any claims arising out of the defendant's administration of the decedent's estate. Specifically, the defendant contends that, because the beneficiaries of the estate failed to object to the accounting proffered by the defendant upon his resignation as executor, the plaintiff is barred from bringing any claims that he could have raised at that time. The plaintiff concedes that his failure to object bars his bringing of any claims against the defendant in the defendant's capacity as executor regarding

---

[4] Because we conclude that the grandchildren were not bound by the release because they were not parties thereto, it is not necessary to reach the two additional issues raised in this appeal, namely, whether the trial court improperly concluded that no genuine issue of material fact existed as to whether: (1) the language of the release barred claims on behalf of the trust itself and the testator's grandchildren, who were remainder beneficiaries of the trust; and (2) the release was voidable due to fraudulent inducement.

any matters that came within the scope of the Probate Court decree approving the accounting. The plaintiff contends, however, that his claims for negligence and breach of contract did not fall within the scope of the Probate Court order approving the defendant's accounting. We agree with the plaintiff.

The following additional facts are relevant to our resolution of this issue. Upon the defendant's resignation as executor, he submitted an accounting of his administration, in accordance with General Statutes § 45a-242 (b), on March 19, 1997.[5] In proffering the accounting, the defendant submitted that "said account-[ing] is a true statement of all monies received and expended by him, that all claims presented have been paid, that to the best of his knowledge, there are no claims now outstanding and that all taxes have been paid subject to audit by the Department of Revenue Services and the Internal Revenue Service." Notice was provided to all beneficiaries of the decedent's estate, and the Probate Court approved the accounting without objection on March 25, 1997.

We begin by setting forth the standard of review that governs our examination of this issue. The issue of whether the doctrine of res judicata is applicable to the facts of the present case is a question of law. Accordingly, our review is plenary. See *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 594, 726 A.2d 502 (1999).

The principles underlying the doctrine of res judicata, or claim preclusion, are well settled. "[A] valid, final judgment rendered on the merits by a court of compe-

---

[5] General Statutes § 45a-242 (b) provides: "The court of probate, after notice and hearing, may accept or reject the written resignation of any fiduciary, but such resignation shall not be accepted until such fiduciary has fully and finally accounted for the administration of his trust to the acceptance of such court."

tent jurisdiction is an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. *Slattery* v. *Maykut*, 176 Conn. 147, 156–57, 405 A.2d 76 (1978). Furthermore, the doctrine of claim preclusion . . . bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action which were actually made or *which might have been made.*" (Emphasis added; internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 420–21, 752 A.2d 509 (2000). Probate Court decrees, including those rendered upon the resignation of an executor, are final judgments for the purpose of the doctrine of res judicata. See General Statutes § 45a-24;[6] *Reiley* v. *Healey*, 122 Conn. 64, 76–77, 187 A. 661 (1936).

Probate courts "are strictly statutory tribunals and, as such, they have only such powers as are expressly or implicitly conferred upon them by statute." (Internal quotation marks omitted.) *In re Joshua S.*, 260 Conn. 182, 197, 796 A.2d 1141 (2002). General Statutes § 45a-175 (a) invests probate courts with jurisdiction over the interim and final accounts of certain fiduciaries, including testamentary trustees and executors.[7] In exercising the jurisdiction afforded by this statute, probate courts "shall determine the rights of the fiduciaries or the attorney-in-fact rendering the account and of the parties interested in the account . . . ." General Stat-

---

[6] General Statutes § 45a-24 provides in relevant part: "All orders, judgments and decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity and shall not be subject to collateral attack, except for fraud."

[7] General Statutes § 45a-175 (a) provides in relevant part: "Courts of probate shall have jurisdiction of the interim and final accounts of testamentary trustees, trustees appointed by the courts of probate, conservators, guardians, persons appointed by probate courts to sell the land of minors, executors, administrators and trustees in insolvency . . . ."

utes § 45a-175 (f). A court of probate may enforce these rights by, inter alia,[8] surcharging the fiduciary for breach of trust. See G. Wilhelm, Settlement of Estates in Connecticut (2d Ed. 2001) § 9:18. Because the court may not, however, award money damages generally; see *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 73, 519 A.2d 1185 (1987); any cause of action seeking such a remedy must be brought in a court of general jurisdiction. Id.

In the present case, the second count of the plaintiff's complaint alleges that the defendant, in various ways, breached the fiduciary duty he owed to the decedent and to the decedent's estate as executor thereof. These claims include allegations that, prior to the decedent's death, the defendant failed to execute properly the decedent's will, improperly exercised authority on behalf of the decedent pursuant to a durable power of attorney, and failed to advise the decedent properly regarding the estate tax consequences of her actions. The plaintiff further alleges that, following the decedent's death, the defendant, in his capacity as executor, failed to administer properly the decedent's estate by, inter alia, failing to follow prudent courses of investment and failing, in various ways, to manage estate taxes. Although some of these claims are barred by res judicata, others are not. We therefore cannot affirm the

---

[8] In settling accounts, courts of probate also have the power: "[1] To charge the fiduciary with property and income received but not accounted for . . . .

"[2] To charge the fiduciary with property and income which he or she neglected to get . . . .

"[3] To eliminate credit for claims allowed but not legally due . . . .

"[4] To eliminate credit for claims paid in the wrong order of priority . . . .

"[5] To eliminate credit for expenses improperly incurred, or chargeable to the fiduciary personally . . . .

"[6] To eliminate credit for legacies improperly paid or paid to the wrong person or in the wrong amount or by the wrong medium . . . .

"[7] To establish provision for claims or legacies legally due but not provided for in the account . . . ." (Citations omitted.) G. Wilhelm, Settlement of Estates in Connecticut (2d Ed. 2001) § 9:18, p. 9-19.

summary judgment rendered for the defendant and the law firm on the second count of the complaint.

As the plaintiff conceded at oral argument in this court, certain of the plaintiff's claims against the defendant in his capacity as executor are barred because they could have been brought in the Probate Court. The Probate Court had jurisdiction to adjudicate those claims in passing upon the validity of the accounting rendered by the defendant. Thus, all claims alleged in the second count of the plaintiff's complaint relating to the defendant's performance of his duties as executor of the decedent's estate are barred because they could have been brought in the Probate Court. To the extent, however, that these claims relate to the federal estate tax consequences of the defendant's management of the estate, they are not barred by res judicata. Because the extent of the estate tax liability was not ascertained until November, 1999, this matter obviously could not have been brought before the Probate Court in March, 1997, when it approved the defendant's accounting. The defendant acknowledged as much in his submission of the accounting, which explicitly stated that it was subject to audit by the Internal Revenue Service.

In addition, the plaintiff's allegations of breach of the defendant's fiduciary duty arising before the decedent's death are not barred; the Probate Court's jurisdiction, as previously addressed herein, was limited to those matters relating to the accounting rendered by the defendant in his capacity as executor. Because these allegations relate to the defendant's provision of legal services and his exercise of a durable power of attorney to the decedent prior to her death, they are not being brought against the defendant in his capacity as executor of the decedent's estate and do not pertain to the accounting submitted by the defendant to the Probate Court. The plaintiff, therefore, could not have raised these claims before the Probate Court.

Res judicata also does not bar the claims made in the first and third counts of the plaintiff's amended complaint, in which the plaintiff alleges, respectively, negligence and breach of contract in the defendant's provision of legal services to the decedent and her estate. These claims are brought against the defendant personally, rather than in his capacity as executor of the decedent's estate. The Probate Court did not have jurisdiction to adjudicate or award damages for these common-law claims, which must be brought in a court of general jurisdiction. It therefore would have been futile for the beneficiaries to have raised these claims in the Probate Court, or in an appeal from the decree of the Probate Court to the Superior Court. See *Carten* v. *Carten*, 153 Conn. 603, 614, 219 A.2d 711 (1960) ("[t]he Superior Court, on an appeal from probate, sits as, and has no greater power than, a court of probate").

In claiming that all of the plaintiff's claims, including those sounding in negligence and breach of contract, are barred by the doctrine of res judicata, the defendant relies upon only one Connecticut authority, *DiMauro* v. *Pavia*, 492 F. Sup. 1051 (D. Conn.), aff'd, 614 F.2d 1286 (2d Cir. 1979). We disagree, however, that *DiMauro* compels the result urged by the defendant.

In *DiMauro*, the decedent's estate was probated in proceedings in both the New York Surrogate's Court and the Connecticut Probate Court. Id., 1057. Following those proceedings, the plaintiff, the decedent's wife, brought an action against the defendant, who had served as administrator of the decedent's estate, for, inter alia, negligence and breach of fiduciary duty. Id., 1058. The negligence claims included allegations of legal malpractice against the defendant and the defendant's law firm. Id.

The federal District Court concluded that, because the plaintiff could have raised those claims in probate

court proceedings in Connecticut and New York, she was barred, under the law of either jurisdiction, from bringing those claims in a separate proceeding. Id., 1061–62. The court relied solely upon New York authorities, however, for the proposition that the plaintiff's *negligence* claims were barred because of her failure to raise them in the proceeding that approved the defendant's accounting. Id., 1063. The court proceeded under an assumption that the laws of New York and of Connecticut are the same, in concluding that the plaintiff's claims were barred.[9] Id., 1061 n.9. We conclude that, because the jurisdiction of the New York Surrogate's Court differs significantly from that of the probate courts of this state, the court in *DiMauro* was mistaken in its assumption that New York and Connecticut law is identical with regard to the preclusive effect of probate court decrees for the purposes of the doctrine of res judicata.

The New York Surrogate's Court, unlike our probate courts, has jurisdiction to adjudicate and award damages in legal malpractice and breach of contract claims arising out of probate administration. See *Matter of Remsen*, 99 Misc. 2d 92, 95, 415 N.Y.S.2d 370 (1979); *Matter of Zalaznick*, 84 Misc. 2d 715, 717–19, 375 N.Y.S.2d 522 (1975). The plaintiff in *DiMauro*, therefore, could have litigated her negligence claims in that forum, and her failure to do so precluded her later attempt to raise such claims in a different forum. In contrast, the plaintiff in the present case had no such option; he was required to initiate a separate proceeding in the Superior Court to pursue his claims. See *Ramsdell* v. *Union Trust Co.*, supra, 202 Conn. 72–73. The doctrine

---

[9] The court in *DiMauro* noted that there was "no inconsistency" between the law of Connecticut and New York in order to avoid a potential conflict of laws issue. See *DiMauro* v. *Pavia*, supra, 492 F. Sup. 1061 n.9. The court therein specifically noted that "the law of New York is considerably more fully developed than that of Connecticut" on the issue of res judicata based on an approved accounting. Id.

of res judicata does not bar the plaintiff in the present case from pursuing claims he previously has not been afforded the opportunity to litigate.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.